BLADE *vs*. NOLAND.

A plaintiff is not allowed to give evidence of the contents of a note, (sworn by him to be *lost* or *destroyed*) or to resort to proof of the original consideration of the note in support of his action, without accounting for the loss or destruction of the note, in such manner as to repel all inference of a fraudulent design in its destruction.

Proof that the plaintiff deliberately and voluntarily *burnt* the note, will not authorize the introduction of inferior or secondary evidence.

*Ex necessitate* a *party* himself is allowed to prove the loss or destruction of a paper, preliminary to the introduction of secondary evidence.

A *bond of indemnity*, in cases of this kind, is necessary only where the note alleged to be lost is *negotiable;* and its negotiability will not be presumed, but must be proved.

ERROR from the Jefferson common pleas. Noland sued Blade in a justice's court, and declared on a note destroyed or lost, and for work and labor. The defendant pleaded the gen-

NEW-YORK, eral issue, and gave notice of *set-off.* The plaintiff called a
May, 1834. witness, and proved by him that the defendant, previous to 4th
Blade March, 1832, gave the plaintiff a note for $24,80, payable in
v. three months, for wages due to him for work done for the de-
Noland. fendant. The plaintiff himself was then sworn, to prove the
loss of the note, and testified that he *burnt* it up the next morn-
ing after it was given. A witness called by the defendant also
gave testimony tending to show that the note was burnt by the
plaintiff on the day after it was given. There however was
proof that the note was in existence subsequent to the day on
which the plaintiff alleged it was destroyed. There was also
evidence of payments by the defendant on account. The jus-
tice rendered judgment in favor of the plaintiff for $18, besides
costs. The common pleas of Jefferson, on *certiorari, affirmed*
the judgment of the justice. The defendant sued out a writ
of error.

*J. G. Watson,* for the plaintiff in error.

*J. Butterfield,* for the defendant in error.

*By the Court,* NELSON, J. I concede the rule insisted on
by the counsel for the plaintiff below, to the fullest extent,
borne out by the authorities, and they are numerous; and still
am of opinion that the plaintiff did not give such proof of the
*loss of the note* as to justify the secondary proof of its contents,
or to entitle him to resort to the original consideration. If
there had been satisfactory proof of the loss or destruction of
the note, the omission to give a bond of indemnity under the
statute, 2 R. S. 406, § 75, 76, would not have interfered with
the recovery; for the provision of the statute on this subject is
limited to *negotiable paper.* There is no evidence that the
note in question was negotiable, and it seems to be settled that
the court will not *presume* a lost note to be negotiable.  10
Johns. R. 104.  3 Wendell, 344.

The proof is, that the plaintiff deliberately and voluntarily
destroyed the note before it fell due, and there is nothing
in the case accounting for, or affording any explanation
of the act, consistent with an honest or justifiable purpose.

Such explanation the plaintiff was bound to give affirmatively, for it would be in violation of all the principles upon which inferior and secondary evidence is tolerated, to allow a party the benefit of it, who has wilfully destroyed the higher and better testimony.  The danger of this very abuse of a relaxation of the general rule greatly retarded its introduction into the law of evidence, and it was for a long time confined to a few extreme cases, such as burning of houses, robbing, or some unavoidable accident.  It was contended by Chancellor Lansing in the case of *Livingston* v. *Rogers*, 2 Johns Cas. 488, after an examination of all the leading cases on the subject, that secondary evidence was not admissible to prove the contents of a paper, where the original had been lost by the *negligence* or *laches* of the party or his attorney. He failed to convince the court of errors to adopt his views in a case where the negligence was not so great as to create suspicion of design.  Further than this I could not consent to extend the rule.  I have examined all the cases decided in this court, where this evidence has been admitted, and in all of them the original deed or writing was lost, or destroyed by time, mistake or accident, or was in the hands of the adverse party. Where there was evidence of the actual destruction of it, the act was shown to have taken place under circumstances that repelled all inference of a fraudulent design.  2 Johns. Cas. 488. 2 Caines, 363. 10 Johns. R. 374, 363. 11 id. 446. 8 id. 149. 3 Cowen, 303. 8 id. 77. 3 Wendell, 344. Peake's Ev. 972, Am. ed. 10 Co. 936, Leyfield's case. 3 T. R. 151. 8 East, 288, 9. Gilb. Ev. 97.

In Leyfield's case Lord Coke gives the obvious reasons why the deed or instrument in writing should be produced in court, 1. To enable the court to give a right construction to it from the words; 2. To see that there are no material erasures or interlineations; 3. That any condition, limitation, or power of revocation, may be seen; for these reasons oyer is required in pleading a deed.  But he says, in great and notorious extremities, as by casualty of fire, &c. if it shall appear to the judges that the paper is burnt, it may be proved by witnesses so as not to add affliction to affliction.

NEW-YORK,
May, 1834.

The above is in brief the foundation of the rule in these cases of secondary proof of instruments in writing, and it has been much relaxed and extended in modern times from necessity, and to prevent a failure of justice ; yet I believe no case is to be found where, if a party has deliberately destroyed the higher evidence, without explanation showing affirmatively that the act was done with pure motives, and repelling every suspicion of a fraudulent design, that he has had the benefit of it. To extend it to such a case would be to lose sight of all the reasons upon which the rule is founded, and to establish a dangerous precedent. We know of no honest purpose for which a party, without any mistake or misapprehension, would deliberately destroy the evidence of an existing debt ; and we will not presume one.

From the necessity and hardship of the case, courts have allowed the party to be a competent witness to prove the loss or destruction of the papers ; but it would be an unreasonable indulgence, and a violation of the just maxim, that no one shall take advantage of his own wrong, to permit this testimony, where he has designedly destroyed it.

Judgment reversed.